IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TREY GUNTER, | ) | |
| | ) | |
| Petitioner | ) | Case No. 1:20-cv-00255 |
| | ) | |
| v. | ) | |
| | ) | RICHARD A. LANZILLO |
| SUPERINTENDENT OF SCI | ) | UNITED STATES MAGISTRATE JUDGE |
| BENNER TOWNSHIP, | ) | |
| PENNSYLVANIA ATTORNEY | ) | MEMORANDUM OPINION |
| GENERAL, and DISTRICT ATTORNEY | ) | ON AMENDED PETITION FOR WRIT OF |
| OF ERIE COUNTY, | ) | HABEAS CORPUS [ECF No. 16] |
| | ) | |
| Respondents | ) | |

MEMORANDUM OPINION

Before the Court is an amended petition for a writ of habeas corpus filed by Trey Gunter,

an inmate at the State Correctional Institution at Benner Township, pursuant to 28 U.S.C. § 2254.

For the reasons that follow, the petition will be denied.[1]

I.     Background

Gunter entered a guilty plea to murder of the third degree in the Court of Common Pleas

of Erie County. On February 9, 2016, he was sentenced to 15 to 40 years' imprisonment. Gunter

filed a post-sentence motion seeking to modify his sentence. It was denied. The Pennsylvania

Superior Court affirmed the judgment of sentence on May 8, 2017. *Commonwealth v. Gunter*, 170

A.3d 1200 (Pa. Super. 2017) (unpublished memorandum). In that memorandum, the Superior

Court set forth the pertinent facts of the case:

> [Gunter's] conviction stems from an incident that occurred on November 17, 2014,
> at an apartment off-campus of Edinboro University. [Gunter], a Pittsburgh native,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

1

was an Edinboro student one semester away from graduating. The victim, Tobiah Johnson, had taken [Gunter's] gun several days earlier. [Gunter] obtained another gun, and, as alleged by the Commonwealth, with the help of Ryan Andrews and Michael Barron, confronted the victim outside of the victim's apartment. The Commonwealth further alleged that Mr. Barron was waiting outside of the victim's apartment, and that when the victim came out, Mr. Barron punched him in his head, knocking him to the ground. [Gunter] and Mr. Andrews got out of their vehicle and assaulted the victim. When the victim tried to get up, [Gunter] shot him in his back, killing him.

*Id.* (unpublished memorandum at 1-2) (citing Trial Court Opinion, 8/8/16, at 1-2).

On January 19, 2018, Gunter filed a petition for relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. The PCRA court appointed counsel, who filed a supplemental PCRA petition. The PCRA court subsequently dismissed the petition. Gunter appealed the dismissal; the Pennsylvania Superior Court affirmed it on August 13, 2019. *Commonwealth v. Gunter*, 221 A.3d 269 (Pa. Super. 2019) (unpublished memorandum). The Pennsylvania Supreme Court denied Gunter's petition for allowance of appeal on May 6, 2020. *Commonwealth v. Gunter*, 232 A.3d 567 (Pa. 2020).

Gunter initiated this litigation on August 31, 2020, by filing a *pro se* petition for writ of habeas corpus. ECF No. 1. Respondents, through the Erie County District Attorney's Office, filed a response thereto. ECF No. 7. On June 11, 2021, Gunter's newly obtained counsel petitioned to file an amended petition for writ of habeas corpus, "to include all meritorious claims for the Petitioner after attorney analysis." ECF No. 13. The Court granted such leave, ECF No. 14, and Gunter filed the instant amended petition on September 14, 2021. ECF No. 16. Respondents filed a response on October 1, 2021. ECF No. 17. Gunter filed a traverse on December 28, 2021. ECF No. 23. The petition is ripe for disposition.

II.   Analysis

   A.   Ground One:   Ineffective assistance of trial counsel regarding self-defense

2

In Ground One, Gunter asserts that his trial counsel gave him erroneous advice prior to entering his guilty plea and that had he been "correctly informed of the law of self-defense, he would not have taken the guilty plea." ECF No. 16 at 4-5. Gunter raised this claim in his *pro se* PCRA petition, ECF No. 23-1 at 4; however, his counsel did not include it in the supplemental PCRA petition, ECF No. 23-2. Because it was not included in the supplemental petition, the PCRA court found the claim to be waived. ECF No. 23-3 at 10. Gunter did not pursue this ineffectiveness claim in his PCRA appeal. Thus, the claim has not been exhausted.

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

In order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)); *O'Sullivan*, 526 U.S. at 848. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Court of Common Pleas and then the Superior Court either on direct or collateral appeal. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion

3

requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (quoting 28 U.S.C. § 2254(b)). In such cases, however, applicants are considered to have procedurally defaulted their claims, *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012) ("Procedural default occurs when a claim has not been fairly presented to the state courts . . . and there are no additional state remedies available to pursue . . . or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule . . . .), and federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To show cause, a petitioner must demonstrate "some objective factor external to the defense" that prevented compliance with the state's procedural requirements. *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), by presenting new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

To the extent that Gunter is now time-barred from raising this claim in state court, the exhaustion requirement is excused; however, the claim is procedurally defaulted. *See, e.g., Lines*, 208 F.3d at 162-66. In an effort to overcome the procedural default, Gunter asserts that the default was caused by PCRA counsel's ineffectiveness in failing to raise this claim in the supplemental PCRA petition. ECF No. 23 at 1-2.

Generally, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the procedural default of a federal habeas claim. *Davila v. Davis*, 137 S. Ct. 2058, 2062

4

(2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Supreme Court announced a narrow, but significant, exception to this rule. In relevant part, it held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding, a petitioner may overcome the default of a claim of trial counsel's ineffectiveness if the petitioner demonstrates: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984) for failing to raise that claim in the initial review collateral proceeding. *Martinez*, 566 U.S. at 17.

In order to demonstrate that the defaulted claim of trial counsel's ineffectiveness is substantial, a petitioner must demonstrate that the claim has "some merit." *Id.* at 14. He has not done so. First, Gunter provides no support whatsoever for his claim. He does not set forth the nature of the allegedly erroneous advice, nor does he set forth the purported basis for a self-defense claim. Further, although the PCRA court found this claim to be waived, it nonetheless thoroughly and persuasively addressed the merits of the claim as follows:

> In order for Petitioner to obtain post conviction relief on grounds that his counsel rendered ineffective assistance, he is required to prove:
>
> > the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. ***Commonwealth v. Pierce***, 567 Pa. 186, 786 A.2d 203, 213 (2001); *see also* ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973 (1987). Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326, 332 (1999). This standard is the same in the PCRA context as when ineffectiveness claims are raised on direct review. ***Id.*** Failure to establish any prong of the test will defeat an ineffectiveness claim. ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000) (citing ***Commonwealth v. Rollins***, 558 Pa. 532, 738 A.2d 435, 441 (1999) (ordinarily, post-conviction claim of ineffective assistance of counsel may be denied by showing petitioner's evidence fails to meet any one of three prongs for claim)).

***Com. v. Solano***, 634 Pa. 218, 230, 129 A.3d 1156, 1162-63 (2015) (citing
***Commonwealth v. Keaton***, 615 Pa. 675, 45 A.3d 1050, 1060 (2012)).

> Generally, counsel's assistance is deemed constitutionally effective if he
> chose a particular course of conduct that had some reasonable basis designed
> to effectuate his client's interests. ***See Ali, supra***. Where matters of strategy
> and tactics are concerned, "[a] finding that a chosen strategy lacked a
> reasonable basis is not warranted unless it can be concluded that an
> alternative not chosen offered a potential for success substantially greater
> than the course actually pursued.

***Com. v. Spotz***, 624 Pa. 4, 33-34, 84 A.3d 294, 311-12 (2014) (internal quotations
and citations omitted).

Applying the law to the case *sub judice*, it is evident that Petitioner's claim that
counsel was ineffective fails. Petitioner is under the misapprehension that he could
have successfully argued that he shot Tobiah Johnson in self-defense had Attorney
Capozzi effectively advised him of the law pertaining to the defense.

> In order for a defendant to successfully claim self-defense, he or she must
> meet the following three elements: (1) the defendant reasonably believed that
> he was in imminent danger of death or serious bodily injury and that the use
> of deadly force was necessary to prevent such harm; (2) the defendant did not
> provoke the incident which resulted in the victim's death; and (3) the
> defendant did not violate any duty to retreat. ***Commonwealth v. Mouzon***,
> 617 Pa. 527, 53 A.3d 738, 740 (2012) (citations omitted). As previously
> noted, the Commonwealth has the burden of disproving self-defense beyond
> a reasonable doubt and may do so by disproving any one of the three self-
> defense elements the defendant must meet. *Id.* at 740-741.

***Commonwealth v. Patterson***, 180 A.3d 1217, 1231 (Pa. Super. 2018).

In the instant case, a self-defense claim was clearly unavailable to Petitioner. The
facts demonstrate that after Tobiah Johnson stole Petitioner's firearm, Petitioner
drove to Tobiah Johnson's apartment with two accessories and confronted him
outside his apartment. ***See*** N.T., Preliminary Hearing, at 12-14. When Tobiah
Johnson came outside, one of Petitioner's cohorts "punched him in his head,
knocking him to the ground," at which point Petitioner got out of the vehicle and
assaulted the victim. *Id.* at 16. Petitioner repeatedly bludgeoned Tobiah Johnson
with the butt of his gun. *Id.* 16-17, 39. After Tobiah Johnson's weapon discharged,
Petitioner paused the assault long enough to comment that Tobiah Johnson still had
a gun on his person, and then resumed the vicious beating. *Id.* at 18. When Tobiah
Johnson attempted to get to his feet, Petitioner shot him in the back. *Id.* at 18, 41,
47. These facts establish that Petitioner provoked the deadly encounter and
eviscerate any argument that he only used deadly force because he reasonably

6

believed he or another person was in imminent danger of death or serious bodily injury.

Moreover, the record contradicts Petitioner's allegation that Attorney Capozzi "misapplied the self-defense law which caused [Petitioner] to plead and accept a guilty plea" or that Petitioner in any way misunderstood the law. Motion For Post Conviction Collateral Relief, 1/19/18 at 4. In "Defendant Trey Gunter's Sentencing Memorandum," Attorney Capozzi explicitly stated, "Mr. Gunter understands that by traveling to Darsche Jackson's apartment, with a firearm and confronting Mr. Johnson about his stolen property he provoked the confrontation and, thus, the defense of self-defense is unavailable to him." Defendant Trey Gunter's Sentencing Memorandum, 12/30/15 at 2-3, n. 1. In the same document, Attorney Capozzi cited to the relevant statute, which states that an individual is justified in using force upon another person "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." *Id.* (citing 18 Pa.C.S.A. §505(a)). Furthermore, Attorney Capozzi cited to relevant case law stating that the Commonwealth may disprove a defendant's claim of self-defense by establishing that the defender provoked the incident. *Id.* (citing ***Commonwealth v. Chine***, 2012 PA Super 28, 40 A.3d 1239, 1243 (Pa. Super. 2012)). Therefore, Attorney Capozzi, a seasoned and experienced veteran of criminal practice, thoroughly explained the unavailability of a justification defense (e.g., self-defense) to Petitioner. The stark reality of this case is the facts do not and never will support the defense of self-defense. Petitioner understood this and knowingly, intelligently and voluntarily admitted he shot Tobiah Johnson with malice and not in self-defense.

Lastly, upon review of the record, it is clear that Petitioner's plea of guilty was knowing and voluntary. At the plea hearing held on September 23, 2015, Assistant District Attorney Roger Bauer questioned Petitioner about whether Petitioner understood the plea agreement and Petitioner indicated he did understand the agreement and entered into it knowingly and voluntarily, as demonstrated by the following colloquy:

> **Mr. Bauer**: The plea agreement is at paragraph five. For the record the defendant will plead guilty to Count One, amending the charge of criminal homicide to murder of the third degree. The remaining charges will be nol [sic] prossed with the cost of prosecution upon the defendant, and for purposes of the Sentencing Guidelines the deadly weapons enhancement used will apply at Count One. Is that your understanding of the plea agreement in this case, sir?

> **Mr. Gunter**: Yes, sir.

> **Mr. Bauer**: Did you have a chance to review this form with your attorney?

> **Mr. Gunter**: Yes, sir.

**Mr. Bauer**: Do you have any questions on the rights that you have and the rights you give up, the maximum penalty or the plea agreement?

**Mr. Gunter**: No, sir.

**Mr. Bauer**: I see above the line "defendant" a signature, is that yours?

**Mr. Gunter**: Yes.

**Mr. Bauer**: Did you sign this form today because you understand everything within this document?

**Mr. Gunter**: Yes, sir.

N.T., Guilty Plea, 9/23/15 at 9-10. Attorney Bauer then explained the charge against Petitioner, which had been amended from first-degree murder to third-degree murder. After Attorney Bauer gave a thorough explanation of the amended charge, Petitioner explicitly stated he was pleading guilty, as demonstrated by the following colloquy:

**Mr. Bauer**: Mr. Gunter, I have to advise you of the legal and factual basis for your plea. The Commonwealth alleges that on or about November 17, 2014, that you, Trey Darrin Gunter, did directly or by virtue of your complicity, intentionally, knowingly, or recklessly, and with malice, at 123 Water Street in a parking lot behind apartment number 27-E in the borough of Edinboro, Erie County, cause the death of another human being, specifically Tobiah Johnson, in that you, Trey Darrin Gunter, did shoot the victim, Tobiah Johnson, resulting in his death, thereby committing the crime of murder in the third degree.

Malice under the law is defined as wickedness of disposition, hardness of heart, cruelty, a recklessness of the consequences, and an extreme indifference to the value of human life.

Do you understand the legal and factual basis for Count One as amended to murder in the third degree?

**Mr. Gunter**: Yes, sir.

**Mr. Bauer**: How do you plead to Count One?

**Mr. Gunter**: Guilty.

*Id.* at 11-12.

Additionally, the Court thoroughly questioned Petitioner about whether he understood the plea agreement. Again, Petitioner indicated he fully understood the agreement and entered into it knowingly and voluntarily, as demonstrated by the following colloquy:

**The Court**: ...Looking at the now amended charge at Count One, Mr. Gunter, you had indicated your plea of guilty and I want to ask you now, is that what you, in fact, did on that date in question as read in this Court?

**Mr. Gunter**: Yes, sir.

**The Court**: Has anyone in any way promised you something or coerced you in any way to tell me something that wasn't true?

**Mr. Gunter**: No, sir.

**The Court**: Have there been any promises made to you outside of what has been identified here in this courtroom?

**Mr. Gunter**: No, sir.

**The Court**: I'm satisfied there's a legal and factual basis to support Count One. I'm also satisfied that his plea of guilty was knowingly and voluntarily entered.

Let me also ask you, with respect to the first sheet, the Understanding of Rights Prior to the Guilty Plea, Mr. Gunter, again, did you have enough opportunity to discuss this matter with your attorney, Attorney Capozzi?

**Mr. Gunter**: Yes, sir.

**The Court**: Were you completely satisfied with his representation?

**Mr. Gunter**: Yes, sir.

**The Court**: And outside of the agreement as set forth in paragraph five, has anyone made any other promises not written in that paragraph?

**Mr. Gunter**: No, sir.

**The Court**: Do you fully understand the maximum penalty and terms of incarceration as the worst case scenario? In other words that is what the maximum represents for this plea; do you fully understand that?

**Mr. Gunter**: Yes, sir.

**The Court**: Did you have any questions about that?

**Mr. Gunter**: No, sir.

**The Court**: And again, by signing your name above the word "defendant," does that mean that on this guilty plea and understanding of rights sheet, these rights were read to you, that you understand them, and acknowledged that by signing this plea sheet?

**Mr. Gunter**: Yes, sir.

*Id.* 13-15. All of these excerpts from Petitioner's plea hearing unequivocally demonstrate that Petitioner's plea of guilty was knowing and voluntary. Petitioner's responses indicate he signed the guilty plea, was under no coercion to enter a plea of guilty, fully understood his rights under the agreement, and had the opportunity to thoroughly discuss the matter with Attorney Capozzi. Further, he also stated, under oath, that he was satisfied with Attorney Capozzi's representation, and again, there was no mention of self-defense. *Id.*

It is abundantly clear that Petitioner has failed to meet his burden of proving that Attorney Capozzi was ineffective for "misapplying" the law of self-defense. There was no factual or legal predicate upon which to assert that Petitioner was justified in killing Tobiah Johnson. Counsel cannot be ineffective for failing to pursue a meritless claim. *Com. v. Solano*, 634 Pa. 218, 230, 129 A.3d 1156, 1162-63 (2015). Accordingly, Petitioner was not denied the effective assistance of counsel, and is not entitled to relief pursuant to the Post Conviction Relief Act.

ECF No. 23-3 at 10-16.

For these reasons, Gunter has failed to establish cause and prejudice to overcome the procedural default of this claim. It is denied.

B.    Ground Two:  Newly discovered evidence

In Ground Two, Gunter asserts that he is entitled to habeas relief on the basis of newly discovered evidence from Commonwealth witness Darsche Jackson. He does not assert any related constitutional violation. He states his claim as follows:

At Petitioner's preliminary hearing, the Commonwealth's sole eye-witness testified that she did not know who fired the first shot - that it came from an "unknown source." Based on this lack of specificity, Petitioner was induced into taking a plea bargain rather than going to trial to avoid a "whodunnit" defense. Following Petitioner's sentencing, the Commonwealth's sole witness admitted to a private

> investigator and on a personal FacebookLive video, that she unequivocally knew
> that the Petitioner did not fire the first shot.

ECF No. 16 at 5.

Gunter raised this claim in his PCRA petition, characterizing the new evidence as "exculpatory" and as "evidence of provocation by Tobia[h] Johnson and a factual and legal predicate for the invocation of a claim of self-defense on behalf of Petitioner." ECF No. 23-2 at 1-2. This claim was raised in the PCRA petition pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi), ECF No. 23-2 at 2, a provision that does not have a counterpart in the federal habeas statute. That provision entitles a PCRA petitioner to relief upon proof that the petitioner's conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." *See also Albrecht v. Horn*, 485 F.3d 103, 123 (3d Cir. 2007) (describing this provision of the PCRA as "the provision of the state post-conviction relief act dealing with claims of innocence based on after discovered evidence.").

In contrast to the PCRA, although a credible claim of actual innocence can act as a "gateway" through which a federal habeas petitioner may pass to obtain review of an otherwise procedurally barred constitutional claim, *see Schlup*, 513 U.S. 298, in a non-capital case such as this one, a free-standing claim of actual innocence is not an independent substantive claim in federal habeas. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). In *Herrera*, the United States Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." *Id.* at 400, 404. This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact." *Id.* at 400.

However, in *Herrera*, the possibility was left open that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim." *Id.* at 417; *see also House v. Bell*, 547 U.S. 518, 554-55 (2006); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). In *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009), which was a non-capital case in which a state inmate brought an action under 42 U.S.C. § 1983 to compel the State of Alaska to release biological evidence so that it could be subject to DNA testing, the Supreme Court in *dicta* assumed without deciding that an actual innocence claim could be brought in habeas, but noted "the high standard any claimant would have to meet" to succeed with such a claim. *Osborne*, 557 U.S. at 71 (citing *House* and *Herrera*).

However, even if a freestanding claim of actual innocence could be brought in a non-capital federal habeas case such as this one, the proffered evidence falls far short of the type of new evidence of innocence that would entitle Gunter to habeas relief. Indeed, the state courts found the evidence to be neither new nor relevant to a self-defense claim. In the PCRA appeal, the Superior Court adopted the PCRA court's opinion on this issue. *Gunter*, 221 A.3d 269 (unpublished memorandum at 6-7). The PCRA court held as follows:

> Before delving into the specifics of Petitioner's argument, this Court observes that no amount of after discovered evidence would allow Petitioner to credibly contend that he now has proof that he acted in self-defense. His contention that he was unaware of the factual and legal predicate for a self-defense claim and was deprived of this defense is patently meritless because it is simply contrary to the law. "The use of force upon or toward another person is justifiable when the **actor** believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a) (emphasis added).
>
> In order for a defendant to successfully claim self-defense, he or she must meet the following three elements: (1) the defendant reasonably believed that

12

he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat. ***Commonwealth v. Mouzon***, 617 Pa. 527, 53 A.3d 738, 740 (2012) (citations omitted). As previously noted, the Commonwealth has the burden of disproving self-defense beyond a reasonable doubt and may do so by disproving any one of the three self-defense elements the defendant must meet. Id. at 740-741.

***Commonwealth v. Patterson***, 180 A.3d 1217, 1231 (Pa. Super. 2018). Thus, for Petitioner to avail himself of a self-defense claim, he would have to establish that the victim, Tobiah Johnson, was armed, and that Petitioner reasonably believed he was in imminent fear of death or serious bodily injury. Petitioner never asserted this position at any time, nor did either of his co-defendants.[fn 7] Petitioner provoked this incident by conspiring with two co-defendants to drive to Tobiah Johnson's apartment and to forcibly take a firearm from him that Petitioner believed was his. Simply stated, it is disingenuous and, in fact, erroneous for Petitioner to assert that his affirmative defense was somehow predic[a]ted on what Darsche Jackson saw or did not see. Only Petitioner had the "keys" to his self-defense claim, not Darsche Jackson or any other witness for that matter. In other words, it is Petitioner's belief at the time of the incident of whether he felt his life or someone else's was in imminent danger of death or serious bodily injury. Petitioner's subjective belief cannot be determined by what another person, such as Darsche Jackson, knew. If Petitioner did not believe that he was under imminent threat of death or serious bodily injury or that another person was, then Petitioner cannot assert a colorable self-defense claim. Accordingly, Petitioner would never be able to credibly assert that his sentence resulted from "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" so to afford him collateral relief pursuant to the PCRA. 42 Pa.C.S.A. § 9543(a)(2)(vi). Further refuting Petitioner's claim was his knowing and voluntarily admission that he shot Tobiah Johnson with malice which will be discussed in further detail, ***infra***.

Assuming, *arguendo*, that Petitioner's first theory of relief somehow survives legal scrutiny and is not meritless, Petitioner's claim that he should be permitted to withdraw his guilty plea because after discovered evidence establishes his innocence would nonetheless fail. In order for Petitioner to be eligible for post-conviction collateral relief based upon after discovered evidence, he must prove: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." ***Commonwealth v. Johnson***, 179 A.3d 1105, 1123 (Pa. Super. 2018) (citing ***Commonwealth v. Cox***, 636 Pa. 603, 614, 146 A.3d 221, 228 (2016)). As will now be discussed, Petitioner cannot meet his burden of proving the elements of this test.

Petitioner claims Darsche Jackson "recanted" her earlier statements to police and her testimony at his Preliminary Hearing, which constitutes after discovered evidence that he was justified in the killing of Tobiah Johnson. However, a review of Darsche Jackson's post-conviction statement, which is attached to the counseled Supplement to Motion For Post-Conviction Collateral Relief, evidences that that Darsche Jackson never recanted her testimony, nor does it contain any exculpatory statements regarding Petitioner's involvement in this murder. Instead, the proffered statement, in fact, corroborates and is cumulative of Darsche Jackson's prior statements and of her testimony at Petitioner's Preliminary Hearing where she testified that she witnessed the confrontation, assault, and murder of Tobiah Johnson. Darsche Jackson consistently stated she saw an unknown male approach Tobiah Johnson from behind, punch him in the head, and knock him to the ground.[fn 8] N.T. Preliminary Hearing, 12/16/14, at 15. While the unknown male continued to beat Tobiah Johnson, a vehicle backed into the parking lot where the assault was occurring, and Petitioner emerged. *Id.* at 12-13, 16. Petitioner began repeatedly striking the victim on the head with the butt of his gun. *Id.* at 16. Darsche Jackson then reported, "A couple of seconds go past as [Petitioner] is hitting him, then I heard a first shot." *Id.* at 17, 38-39 (relaying she heard a gunshot prior to Petitioner fatally shooting Tobiah Johnson). Darsche Jackson heard Petitioner react to the gunshot by exclaiming that Tobiah Johnson still had the gun on him, thus evidencing his knowledge of the fact. *Id.* at 18. On cross-examination, Petitioner's counsel even clarified that it Tobiah Johnson who fired the first shot. *Id.* at 39.

Clearly, Darsche Jackson did not recant her prior testimony. Nor do her post-conviction statements constitute "after discovered evidence." Petitioner always knew that Tobiah Johnson's weapon discharged first, not only because Darsche Jackson testified to it in Petitioner's presence and was cross-examined on the details by Petitioner's counsel, but also because Petitioner was physically present when that event occurred. In fact, Petitioner expressly demonstrated his awareness of that fact that Tobiah Johnson's gun discharged when he reacted to the gunshot by exclaiming to his cohort that Tobiah Johnson still had the gun on him. Thus, the content of Darsche Jackson's post-conviction statement was not discovered **after** Petitioner's conviction, and does not warrant post-conviction relief because it is evidence that was available to Petitioner prior to his guilty plea. *See Johnson, Cox, supra.*

Additionally, Darsche Jackson's post-conviction statement does not provide any basis for Petitioner to claim that the content therein would have compelled a different outcome than the one that resulted from his guilty plea. *See Johnson, Cox, supra*. As discussed *supra*, Petitioner was, at all times, aware that Tobiah Johnson's gun discharged prior to Petitioner shooting him in the back. Petitioner alone knew whether he reasonably believed that his life or someone else's was in imminent danger of death or serious bodily injury so to assert self-defense. Thus, Darsche Jackson's post conviction statement could not have provided him with the factual or legal predicate to argue that the homicide was justified, and, therefore, would not have resulted in a different outcome. *Johnson, Cox, supra*. Again, without

being unnecessarily redundant, Petitioner's knowing and voluntary plea circumvents his current argument. Accordingly, Petitioner's claim is devoid of legal and factual merit, and does not warrant relief.

In sum, Petitioner has not met his burden of proving that he is entitled to collateral relief from his conviction because he cannot establish "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" or the necessary elements of after discovered evidence. 42 Pa.C.S.A. §9543(a)(2)(vi); *see also Johnson, Cox, supra*. Consequently, this claim must fail.

* * *

[fn 7] This Court also presided over Petitioner's co-defendant[s'] cases. Both pled guilty, and neither one raised the possibility of a self-defense claim.

[fn 8] This individual was later identified as Michael Barron.

ECF No. 23-3 at 5-9.

Based on the foregoing, the claim is denied. It is not cognizable, and, even if it were, the evidence Gunter offers in support thereof does not satisfy the demanding standard that would be required to prevail on a freestanding claim of actual innocence.

    C.    Ground Three: Ineffective assistance of appellate counsel

Gunter next asserts that his appellate counsel was ineffective for failing to raise on appeal the issues raised in his post-sentence motion. ECF No. 16 at 6-7. Gunter did not raise this claim in state court; it is therefore unexhausted. To the extent that Gunter is now time-barred from raising this claim in state court, the exhaustion requirement is excused; however, the claim is procedurally defaulted. *See, e.g., Lines*, 208 F.3d at 162-66. In an effort to overcome the procedural default, Gunter asserts that the default was caused by PCRA counsel's ineffectiveness, citing *Martinez*. ECF No. 23 at 3.

As set forth above, the exception outlined in *Martinez* applies only to claims of trial counsel's ineffectiveness. The United States Supreme Court has specifically directed that this

15

exception does not apply to claims of ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2066-67, (2017); *see also Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 761 (3d Cir. 2018) ("[P]risoners who want to challenge the ineffectiveness of their *appellate* counsel on federal habeas cannot turn to *Martinez*.") (emphasis in original).

Gunter has failed to overcome the procedural default of this claim. It is denied.

D.    Ground Four: Ineffective assistance of PCRA counsel for failing to raise trial counsel's ineffectiveness

This claim is a reiteration of Gunter's effort to overcome the procedural default of Ground One. He states this claim as follows:

> Petitioner filed his initial PCRA Petition[] pro se. Court appointed Attorney Hathaway, through his ineffective assistance, failed to raise Petitioner's ineffective assistance of counsel claim regarding trial counsel in the supplemental PCRA petition. As a result, the PCRA court deemed Petitioner's claim waived. Petitioner wrote to Attorney Hathaway requesting the ineffective assistance of counsel claim raised - to which Attorney Hathaway never responded nor did he raise the issue.

ECF No. 16 at 8.

Gunter is not entitled to habeas relief on this claim to the extent he asserts it as a standalone claim. This claim is not cognizable in a federal habeas petition. Gunter did not have a federal constitutional right to counsel during his PCRA proceeding, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); therefore, he cannot receive habeas relief on a stand-alone claim that his PCRA counsel was ineffective. This concept is codified by statute at 28 U.S.C. § 2254(i), which expressly provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." *See also Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings .... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")

16

E.      Ground Five:  Ineffective assistance of PCRA counsel for failing to raise appellate
        counsel's ineffectiveness

This claim is a reiteration of Gunter's effort to overcome the procedural default of Ground
Three.   It fails for the same reason that Ground Four failed.   A claim of PCRA counsel's
ineffectiveness is not cognizable in a federal habeas case.

III.    Conclusion

For the foregoing reasons, the petition will be denied.

IV.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for
appellate review of a district court's disposition of a habeas petition.   It provides that "[u]nless a
circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court
of appeals from … the final order in a habeas corpus proceeding in which the detention complained
of arises out of process issued by a State court[.]"   28 U.S.C. § 2253(c)(1)(A).   It also provides that
"[a] certificate of appealability may issue ... only if the applicant has made a substantial showing
of the denial of a constitutional right."   *Id.* § 2253(c)(2).   "When the district court denies a habeas
petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a
[certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason
would find it debatable whether the petition states a valid claim of the denial of a constitutional
right and that jurists of reason would find it debatable whether the district court was correct in its
procedural ruling."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   Where the district court has
rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable
jurists would find the district court's assessment of the constitutional claims debatable or wrong."
*Id.*  Applying those standards here, jurists of reason would not find it debatable whether Gunter's

17

claims should be denied for the reasons given herein.  Accordingly, no certificate of appealability should issue.

An appropriate Order follows.

Dated: May 10, 2022

RICHARD A. LANZILLO
United States Magistrate Judge

18